UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY PARNELL,

        Plaintiff,

                                            Case No.: 17-12560

v.                                       Honorable Gershwin A. Drain

RICHARD BILLINGSLEA, *et al*.,

        Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FINDING DEFENDANTS' MOTIONS FOR PROTECTIVE ORDER AND RECONSIDERATION [#41, #44] MOOT

## I. INTRODUCTION

Plaintiff Terry Parnell commenced the instant action on July 12, 2017 in the Third Judicial Circuit Court of Michigan. Defendants removed this action on August 8, 2017. The remaining federal claims include Fourth Amendment claims for excessive force against Defendants Richard Billingslea and Hakeem Patterson, false arrest and wrongful detention against Billingslea, and malicious prosecution against Defendants Clinton Mack and Billingslea,[1] as well as state law intentional

---

[1] In his responsive brief to the Defendants' Motion for Summary Judgment, Plaintiff stipulates to the dismissal of his *Monell* claim, therefore this claim is DISMISSED. Moreover, to the extent Plaintiff's Complaint alleges claims under the Fifth and Fourteenth Amendments; these claims are likewise DISMISSED because Plaintiff does not address these claims in his brief.

tort claims of malicious prosecution, false arrest, wrongful imprisonment, and excessive force against Billingslea.

Presently before the Court is the Defendants' Motion for Summary Judgment, filed on April 24, 2018. Plaintiff filed a Response in Opposition on May 22, 2018, and Defendants filed their Reply in support of Summary Judgment on June 5, 2018. Also before the Court is the Defendants' Motions for Protective Order and for Reconsideration. A hearing was held on the Defendants' Motions for Summary Judgment and for Protective Order on June 25, 2018.

For the reasons that follow, the Court will deny the Defendants' Motion for Summary Judgment and finds that the Motions for Protective Order and for Reconsideration are moot.

## II. FACTUAL BACKGROUND

On the evening of January 14, 2017, Plaintiff was at his then fiancé Nicole Cann's home located at 10450 Greensboro in Detroit, Michigan. At that time, Plaintiff and Cann had been together for eight or nine years. They were watching television and celebrating Plaintiff's birthday, along with several of Cann's grandchildren. Plaintiff was wearing a dark shirt and Cann wore a multi-colored Hawaiian style shirt.

A week before Plaintiff's birthday, someone had broken into Cann's home and she asked him to load her new Ruger since her carpal tunnel syndrome

prevented her from doing so. Cann thereafter went out on her front porch and fired practice shots at an abandoned home located to the north. Plaintiff remained inside. One of Cann's neighbors called 911 and alerted police that shots had been fired in the neighborhood.

Defendants Billingslea and Patterson, Detroit Police Officers from the 5th Precinct, were dispatched to respond to "a shots in progress" on Greensboro. Their vehicle was a semi-marked police car. They used their scout car's spotlight to scan the area. They passed Cann's house, but did not see anything. However, Billingslea claimed to witness Plaintiff on the front porch shooting a gun towards their patrol car while looking at his rearview mirror. He claims he saw Plaintiff run back inside the house.

Billingslea called over the police radio that shots had been fired and the officers took cover. Several other units from the 5th, 7th and 9th Precincts arrived on the scene. Officers knocked on the door; however Plaintiff and Cann voluntarily came out of the house. Cann claims that as soon as they exited the home, she loudly yelled that she was the one who had been shooting. The Officers ordered them to the ground and they both quickly complied.

Plaintiff claims that the officers then ordered him to stand up, with his arms in the air, and to walk backwards toward the house immediately south of Cann's home. Once Plaintiff walked to the point where the officers were standing, he was

3

thrown to the ground and beaten. Plaintiff saw Billingslea kick him. Defendant Billingslea placed Plaintiff in handcuffs. While Plaintiff could not see Patterson, he knew that he was in the immediate vicinity. After he was beaten, Billingslea and Patterson dragged Plaintiff to the patrol car. Plaintiff suffered considerable bruising, lacerations, pain and suffering from the beating.

Cann informed the officers that the gun was inside the house and she gave consent for them to go into the house. Officers recovered a 9E Ruger handgun on the bed with seven live rounds in it. Cann continued to yell that she had been the one shooting, but the officers ignored her. Cann became so frustrated that she called 911 and informed the operator that she had been the one shooting and that the officers were ignoring her and arrested her friend.

The Chief Duty Officer, Officer Thornton, was the highest ranking officer in the City on January 14, 2017. He prepared a report of his investigation at the scene. In his report, he noted that he could not determine that shots had been fired at the officers as Defendant Billingslea claimed because he could not find any vehicle strikes upon inspection. Additionally, Sergeant Diaz, an evidence technician, thoroughly searched the area south of Cann's home where Defendant Billingslea claimed the shots were fired, but found no evidence of any bullets. Diaz spoke with Cann, who told him that she was firing shots at an abandoned home to the north. Diaz's team collected bullets and shell casings from the

abandoned home consistent with Cann's story and inconsistent with Defendant Billingslea's claim that he witnessed Plaintiff shooting at his patrol vehicle.

Plaintiff was transported to the Detroit Detention Center. Thereafter, Defendants Billingslea and Patterson went to the police station and prepared their reports. Defendant Clinton Mack was assigned as the officer in charge of the case. After reviewing all of the officers' reports concerning the incident and interviewing the Plaintiff, Mack generated an investigator's report. His report failed to include any of Officer Diaz's findings. Mack also submitted a warrant request to the prosecutor. Based on Mack's, Billingslea's and Patterson's report, as well as speaking with Defendant Billingslea, warrants prosecutor Pachia Young approved the warrant and Plaintiff was charged with weapons, carrying concealed, assault with a dangerous weapon and felony firearm. Cann was able to post bond on January 23, 2017, and Plaintiff was released from the Wayne County Jail.

On January 30, 2017, Mack and Billingslea attended Plaintiff's preliminary examination. Billingslea was the only witness to testify. He testified that he saw Plaintiff on Cann's front porch, shooting at his patrol vehicle. Based on this testimony, Plaintiff was bound over for trial, which was scheduled for May 3, 2017.

On the day set for trial, Prosecutor Barbara Lanning requested an adjournment because she was in the middle of another criminal trial. When

Lanning was on a break, Diaz showed Lanning his report and explained the evidence his team had collected. Prior to this, Lanning had no knowledge of his team's findings or of the report, even though Defendant Mack had opportunities to reveal this evidence to her. Lanning concluded that Billingslea's preliminary examination testimony was impossible based on the physical evidence. She immediately decided to dismiss the case. Without any reference to the underlying reason for the dismissal, the trial judge dismissed the case without prejudice. During her deposition, Lanning testified that she would never go to trial on the case, nor would she ever bring charges against the Plaintiff again.

Plaintiff asserts that he has developed a sleep disorder, suffers from flashbacks, intrusive recollections, high blood pressure, nose bleeds, panic attacks and fearfulness as a result of his encounter with Defendants Patterson and Billingslea, as well as his subsequent detention and the criminal charges sought and obtained by Defendant Mack. Plaintiff has been evaluated by a doctor who has opined that he has reactive psychological problems that are long-lasting and permanent.

### III. LAW & ANALYSIS
#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

    **B. Section 1983 claims**

        **1. Excessive Force**

As an initial matter, Defendants maintain that they are entitled to qualified immunity on Plaintiff's Fourth Amendment claims. Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Chapman v. Brown*, 814 F.3d 447, 457 (6th Cir. 2016) (quoting

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). In determining whether a law enforcement officer is entitled to qualified immunity on an excessive force claim, two questions must be evaluated. *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016). The first inquiry in the qualified immunity analysis is whether, based on the facts alleged and considered "in the light most favorable to the party asserting the injury," the official's conduct violated the plaintiff's constitutional rights under the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

If the district court finds a Fourth Amendment violation, the next step is to determine whether the right was clearly established at the time of the incident. *Id.* at 202. The district court may address the qualified immunity analysis in any order. *Kent*, 810 F.3d at 390. The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry his burden as to either element of the qualified immunity analysis, then the official is immune from suit. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

To answer the question of whether Defendants Billingslea's and Patterson's use of force violated the Fourth Amendment "turns on whether [their] actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to [their] underlying intent or motivation." *Kent*, 810 F.3d at 390 (internal quotation marks omitted). "The reasonableness of a particular use of

force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Factors to consider are: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id*. "The ultimate question, however, is whether the totality of the circumstances justifies a particular sort of seizure." *Kent*, 810 F.3d at 390 (internal quotation marks omitted). The district court "must take into account the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id*

Here, there is a question of fact as to whether Defendants Billingslea and Patterson used excessive force. While they claim that Defendant Patterson was some 20 feet away scanning his surroundings while Defendant Billingslea placed Plaintiff in handcuffs, Plaintiff recalls that Patterson was near enough to have intervened to protect Plaintiff from Billingslea's actions. It has long been the law in this Circuit that a police officer has a duty to protect a citizen against the unconstitutional conduct of another officer. *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) (holding that a police officer has a duty to try and stop another

officer who uses excessive force against a person in the officer's presence). In view of the facts most favorable to Plaintiff, Patterson had the ability to intervene and prevent Billingslea's unconstitutional use of force against the Plaintiff.

Defendants assertion that Billingslea's conduct was reasonable because he was responding to "a shots fired in the neighborhood" 911 call is without merit. Plaintiff and Cann have testified that when Plaintiff was forcibly taken to the ground, he was walking backwards towards the officers with his hands in the air as directed by their orders. Defendant Billingslea could see that Plaintiff did not have a gun in his hand. Plaintiff further testified that once he had been slammed to the ground and completely subdued, Defendant Billingslea inflicted a knee strike and continuously struck the Plaintiff. Additionally, Plaintiff maintains that at no time was he resisting arrest, thus this conduct, as well as dragging him to the patrol vehicle would allow a reasonable jury to conclude that there was no legitimate governmental interest in continuing to beat and to kick Plaintiff when he was fully compliant and not resisting arrest. *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994); *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988).

Additionally, the unlawfulness of Billingslea's and Patterson's action would be clear to a reasonable officer. Assaulting an unarmed and compliant individual has been a clearly established violation of the Fourth Amendment for decades. *See*

*Phelps,* 286 F.3d at 30; *Adams*, 31 F.3d at 386; *McDowell*, 863 F.2d at 1306. Defendants Billingslea and Patterson are not entitled to summary judgment on Plaintiff's Fourth Amendment excessive force claim.

### 2. False Arrest, Wrongful Detention and Malicious Prosecution

Plaintiff has also alleged Fourth Amendment claims of false arrest and false imprisonment against Defendant Billingslea. The Court concludes that Plaintiff has sufficiently shown that there remains a material question of fact for the jury's determination with respect to these claims. Similar to the plaintiff in *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999), who alleged that the defendant-officer fabricated evidence to support the plaintiff's arrest and prosecution for murder, Plaintiff has produced evidence of the Diaz report and witness testimony that Defendant Billingslea fabricated evidence against Plaintiff to support probable cause for his arrest and prosecution. *Id*. at 1005. This conduct, if true, would violate Plaintiff's constitutional rights. *Id*. (holding that the defendant-officer "cannot seriously contend that a reasonable police officer would not know that such actions were inappropriate and performed in violation of an individual's constitutional" rights.)

Moreover, it is well settled that arrest and imprisonment based on fabrication of evidence to support probable cause and continued detention is a clearly

established constitutional violation. *Id*. at 1006. The *Spurlock* court considered this very issue and concluded that "a reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." *Id.* Thus, Defendant Billingslea is not entitled to judgment in his favor on Plaintiff's Fourth Amendment unlawful arrest and detention claims.

As to Plaintiff's Fourth Amendment malicious prosecution claim against Defendants Billingslea and Mack, the Court likewise concludes that summary judgment in their favor is without basis. In *Gregory*, the plaintiff alleged that police officers misled the court at the preliminary examination and, therefore, the defendant officers could not reasonably rely on the court's determination of probable cause during the preliminary examination. The Sixth Circuit found a Fourth Amendment violation because the defendant-officers could not "rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court." *Gregory*, 444 F.3d at 758. Additionally, the *Gregory* court held that whether the defendant-officers testified truthfully was a question for the jury and not the court because the plaintiff had presented sufficient evidence for the jury to conclude that the defendant-officers "deliberately obfuscated the truth at the preliminary hearing[,]

thus the "[p]laintiff's continuing detention in reliance on the preliminary hearing findings would be unreasonable." *Id.* at 759.

Based on the record before this Court, a reasonable jury could conclude that Defendant Billingslea fabricated evidence by indicating in his report, as well as by testifying at the preliminary examination that Plaintiff had fired shots at his vehicle. Similarly, a reasonable jury could conclude that Defendant Mack purposefully held material information from the prosecution when he failed to apprise them of the Diaz report and its findings. Thus, a reasonable jury could conclude that both Defendants violated Plaintiff's constitutional rights to be free from wrongful arrest and detention.

Additionally, it is beyond dispute that Plaintiff's constitutional right to be free from wrongful arrest, detention and malicious prosecution based on the fabrication of evidence has been established well before the incident giving rise to the instant action. *See Gregory*, 444 F.3d at 758-59; *Spurlock*, 167 F.3d at 1005-06.

While Defendants argue collateral estoppel precludes Plaintiff's claims, such an argument is meritless because the basis of Plaintiff's claim stems from Defendants' fabrication of, or failure to produce material evidence of Plaintiff's innocence. *See Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001) (holding that a preliminary examination finding of probable cause does not bar subsequent

litigation of wrongful arrest and detention where the claims are based on fabricated evidence). Defendants also argue that Plaintiff cannot show his criminal case was terminated in his favor because it was dismissed without prejudice, thus he cannot establish a malicious prosecution claim. Defendants rely on a decision by this Court in support of this argument-*Craft v. Billingslea*, No. 17-cv-12752-however, this decision is distinguishable in that it was resolved during the Rule 12(b)(6) stage. Here, Plaintiff has come forward with considerable evidence that the charges against him will never be brought again. The Wayne County prosecutor has provided testimony that based on witness statements, as well as the physical evidence uncovered by Diaz and his team precludes recharging Plaintiff with any firearms offenses.

For all of these reasons, Defendants Billingslea and Mack are not entitled to judgment in their favor on Plaintiff's federal false arrest, wrongful detention and malicious prosecution claims.

### C. State Law Claims

Because the Court concludes that Plaintiff has established material questions of fact remain on his federal claims of false arrest, wrongful detention, malicious prosecution and excessive force against Defendant Billingslea, he has similarly established that his corresponding state law intentional tort claims must be submitted to the jury. *See Smith v. Stolberg*, 231 Mich. App. 256, 260; 586

N.W.2d 103 (1998)(assault and battery); *Moore v. City of Detroit*, 252 Mich. App. 384, 652 N.W.2d 688 (2002)(false arrest and imprisonment); *Payton v. Detroit*, 211 Mich. App. 375, 394-95; 536 N.W.2d 233 (1995)(malicious prosecution).

The Court further concludes that Defendant Billingslea is not entitled to governmental immunity. Governmental immunity is available when:

(1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority,
(2) the acts were undertaken in good faith, and
(3) the acts were discretionary, rather than ministerial, in nature.

*Odom v. Wayne County*, 482 Mich. 459; 760 N.W.2d 217 (2008). A government employee acts without good faith when he acts maliciously or with a wanton or reckless disregard of the rights of another. *Id*. at 464.

Here, the evidence shows that Defendant Billingslea did not engage in good faith when he lied about observing Plaintiff shoot at his vehicle, prepared a police report containing this false information and repeated these false observations during Plaintiff's preliminary examination while knowing his claims were untrue. Defendant Billingslea is likewise not entitled to judgment in his favor on Plaintiff's state law intentional tort claims.

### D. Disciplinary Files and Internal Affairs Investigation Records

On May 17, 2018, the Court entered an Order granting in part and denying in part Plaintiff's Motion to Compel, which sought disciplinary and internal affairs records pertaining to the named Defendants herein. While the Court granted Plaintiff's motion with respect to this request, the Court ordered the Plaintiff to submit a revised request for production seeking only those disciplinary files and internal affairs records that are relevant to the issues raised in the instant action by the end of May. Thereafter, Defendants filed a Motion for Protective Order and a Motion for Reconsideration with respect to these records.

On June 11, 2018, Defendants filed a Notice with the Court indicating that Plaintiff had failed to submit to Defendants the list required by this Court's May 17, 2018 Order. Moreover, Plaintiff has stipulated to the dismissal of his *Monell* claim, which was the basis upon which he sought Defendants' disciplinary and internal affairs records.

Accordingly, based on Plaintiff's failure to submit the revised production list identifying the records sought as directed by the Court, as well as his agreement to dismiss his *Monell* claim from this action, Defendants' Motion for Protective Order and Motion for Reconsideration are rendered moot.

IV. **CONCLUSION**

Accordingly, the Defendants' Motion for Summary Judgment [#34] is DENIED. Defendants' Motion for Protective Order [#41] and Motion for Reconsideration [#44] are both moot.

SO ORDERED.

Dated:  June 29, 2018                              /s/Gershwin A. Drain
                                                                                        GERSHWIN A. DRAIN
                                                                                        United States District Judge

CERTIFICATE OF SERVICE

A copy of this order was served upon attorneys of record on
June 29, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk